# Craig *versus* The Cumberland Valley State Normal School.

1. The charter of a Normal School authorized a capital of $30,000, with privilege to increase to $100,000, and borrow money: it provided that " as soon as a sufficient number of shares have been subscribed, and a sufficient amount of money paid in, the trustees shall erect such building as will meet the requirements of the Act of Assembly," &c. This did not render the subscriptions to stock conditional, nor prohibit the erection of buildings after $30,000 of stock had been subscribed.

2. It was not required that all necessary means should be provided before beginning to erect.

3. In a suit against a subscriber for a second instalment, evidence that he had paid the first on representations of a trustee that enough stock had been furnished to finish the building, was inadmissible to rebut the presumption that he had ratified his subscription by paying the instalment.

4. The defendant voted at meetings of stockholders, offered to sell his stock, and paid an instalment, knowing the building was being erected. These were a ratification of his subscription. *Per* HALL, P. J.

[*Craig v.* Normal School.]

May 17th 1872.  Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cumberland county :* No. 70, to May Term 1872.

On the 17th of June 1871, The Cumberland Valley State Normal School brought an action of assumpsit against J. Watson Craig, to recover "an instalment of 25 per cent., amounting to $250, on the subscription price of 40 shares of the capital stock of the company."

The defendant subscribed by signing the following paper :—

"We whose names are hereunto annexed agree to take the number of shares of stock in the Cumberland Valley State Normal School, set opposite our names respectively ; each share of stock to be twenty-five dollars, to be paid in instalments as required by the charter, payable as designated."

The charter provided that the capital stock should consist of 1200 shares of $25 each, with privilege to increase to any amount not exceeding 4000 shares.

The 5th and 7th articles of the charter were as follows :—

5. The trustees shall have power * * * " to borrow money to the amount of one-half the value of the real estate belonging to the said corporation, and to execute a mortgage or mortgages on the same in security for the payment thereof, &c.

" 7. As soon as a sufficient number of shares of stock shall have been subscribed and a sufficient amount of money paid in, the trustees shall erect, or cause to be erected, in a substantial and workmanlike manner, such building or buildings, as will meet the requirements of the Act of Assembly relative to the establishment of State Normal Schools ; to be located in some suitable and convenient place in or near the borough of Shippensburg."

The defendant pleaded payment and gave notice of the following special matter :—

That the plaintiffs were by their charter forbidden to contract for the erection or to erect a building that would cost more than the amount of stock bonâ fide subscribed ; that the defendant subscribed " in view of this provision of the charter and with the express understanding that the plaintiffs would not erect, or contract for the erection of a building, that would cost in excess of the bonâ fide subscriptions to the stock of the plaintiffs.  That the plaintiffs in violation of their charter, have undertaken to erect a building that when completely finished will cost over one hundred thousand dollars.  That the cost will be at least four-fold in excess of the amount of subscriptions to stock hitherto procured.  That in the erection of the building the plaintiffs have already expended the appropriation allowed by the laws of Pennsylvania for Normal Schools.  That this appropriation was procured by a special act of legislation for that purpose had, in advance of the time when

[Craig *v.* Normal School.]

by the general law on this subject it was properly payable, and this was done without the knowledge or consent of the defendant. That all these proceedings were contrary to the charter of the plaintiffs and the law of the land, and by reason thereof the stock of the defendant has become of no value. That defendant never consented to this action and conduct of the plaintiffs, but on the contrary thereof protested against the same. That the plaintiffs have not funds to complete such building, and never will be able to complete the same, whereby the purposes for which the plaintiffs were chartered and the defendant's stock subscribed will be rendered abortive."

The cause was tried April 12th 1872, before Hall, P. J. The plaintiffs gave in evidence the charter, defendant's subscription, &c.; that two instalments had been called, the first of which the defendant had paid; and rested.

The defendant testified that no plan of a building had been adopted when he subscribed; that he had been a member of the board of trustees from May until December 1870.

It was then proposed to prove by him that as trustee "he protested against the erection of the present building, and never assented to it. That about 1st of January 1871, he and about fifty other stockholders presented a remonstrance to the board of trustees against the erection of a building that would cost more than the amount of capital subscribed. That the board refused to consider the remonstrance favorably, and he then resigned as a member of the board. That the present building will cost about $100,000. To prove, also, that he was induced to pay the first call on his stock by the representations of Mr. McCune that they had promises of large subscriptions to the stock, and that enough would be taken to finish the building, and that he paid before the contract for the building was awarded; and when he discovered that subscriptions were not being made as represented, and that the contract had been made for a building greatly in excess of the ability of the association to pay, he refused to pay the call on his stock, for which this suit has been brought. The purpose for which the evidence about the circumstances under which the first call was paid is offered, is simply to remove the inference that defendant ratified his contract by this payment."

The offer was objected to by the plaintiffs.

The court allowed the remonstrance to be given in evidence, but rejected evidence of representations made by McCune, and sealed a bill of exceptions for defendant. The remonstrance is as follows:

"To the Trustees of the Normal School of Shippensburg.

"Gentlemen:—It being evident from the very limited subscriptions obtained for the erection of Normal School buildings that the amount is altogether inadequate for the accomplishment

[Craig v. Normal School.]

of the object, we would respectfully ask you to suspend work until after you will have secured the subscription of a sufficient amount of means, say fifty thousand dollars."

The defendant further testified that he would not have subscribed except on the stipulation of the charter that the stock was to be sufficient for the building; he voted and protested against the building on the ground that it would cost too much; the building would cost $100,000 without furniture; when he paid his first call the contract for building had not been made.

On cross-examination he said he had been at the meeting of the trustees when the plans for the building were submitted; he had voted for them on the representation that the cost would be about $60,000; he had voted to increase the stock to $100,000; he had done all he could to get stock taken; he acted as stockholder after he resigned as trustee, voted at meetings and gave a proxy for his vote; voted to accept a deed for the land.

There was other evidence that the cost of the building would be about or over $100,000, besides furniture and ornamenting the grounds.

There was evidence that there was about $38,000 stock subscribed, and that the state appropriation of $15,000, also had been received; also, that about July 1870, the defendant offered to sell his stock.

The following were points of plaintiffs:—

4. If the jury believe, from the evidence, that defendant continued to act as a director in the plaintiffs' company after he had full knowledge of the fact he now alleges in defence to this action, or that, as a shareholder, he exercised his right and privilege, as such, to vote at the meetings of the stockholders of said company, or offered to sell or dispose of his stock to a third party, or paid any instalment upon the same, if he did either or any of these things it was such a ratification of his original undertaking as will prevent his avoiding the contract.

5. The evidence establishes no such radical deviation from the original contract of subscription as will effectually relieve or discharge the defendant from his undertaking.

6. The defendant is presumed to have subscribed with a full knowledge of the charter or its provisions; and if the acts complained of were warranted by the charter, or any of its provisions, or by any amendment or alteration of the same, made under the terms of the original charter, or by authority of the same, the defendant is not discharged from his liability because of such acts.

The court answered these points as follows:—

"4. If the defendant, after this building was determined on and contracted for, acquiesced in the action of the board and ratified what had been done, he could not afterwards change his position

22 P. F. SMITH—4

[Craig *v.* Normal School.]

and refuse to pay his stock. If he voted at meetings of the stockholders and offered to sell his stock and paid an instalment, with the full understanding of erecting such a building as is being erected, these acts would amount to a ratification.

" 5. We affirm this point if you are satisfied from the evidence that the board of trustees entered upon the erection of the building bonâ fide, that the stock subscribed, and to be subscribed, and the appropriations and bequests and mortgages, not exceeding one-half of the value of the real estate which they might reasonably expect to receive and negotiate, would prove sufficient to erect the building.

6. " Affirmed."

The following are points of the defendant with their answers :—

2. The 7th article of the charter forbade the company from undertaking the erection of a building until enough of bonâ fide subscriptions had been made, to finish a building that would come up to the requirements of the Act of Assembly on the subject of Normal School buildings.

Answer : " We refuse to affirm this point as stated. It was not necessary, by the terms of the charter, that enough stock should have been first subscribed to *finish* a building that would come up to the requirements of the law. If enough stock was subscribed (not being less than twelve hundred shares, equal to $30,000, which amount was requisite before the company could organize) to enable the trustees to erect such building, they had the right to do so, if bonâ fide, they had the reasonable expectation of ultimately finishing the same by procuring other stock, or receiving bequests or appropriations, or by borrowing money on mortgage, according to the provisions of the charter."

3. If the jury believe, from the evidence, that the present building, without furniture and the other fixtures required by law to appertain to Normal School buildings, will cost $100,000, or about that sum, and that the actual amount of subscriptions reaches only from $32,000 to $38,000, then the contracting for this building was such a violation of the charter as would release Craig from his subscription, unless with a full knowledge of all the facts he assented to it.

4. The payment by Craig of the first call on his stock, to wit, $250 in November 1870, and the other acts relied upon by the plaintiffs, as evidence that he ratified the undertaking of the present building, will not amount to a ratification, if the jury believe that when he made this payment, and did the other acts, the contract for the building had not been awarded, and he was led to believe that large subscriptions to the capital stock were being taken, and enough would be taken to justify the undertaking of a school building such as was required by law.

5. Under the fifth article of the constitution, the company

[Craig v. Normal School.]

had no right to mortgage the real estate of the association to raise a fund for the erection of a school building. That the fifth and seventh articles of the constitution must be construed together, and that when taken together, they forbid this construction.

The 3d, 4th and 5th points were refused.

The court, after recapitulating the evidence, also charged : * * *

"But the defendant affirms he always was of opinion that it was unwise to undertake to erect a building that would cost $100,000 with stock subscriptions amounting to only between thirty and forty thousand dollars, and a state appropriation of fifteen thousand dollars, and that he and other stockholders protested against going on with the building until more stock was raised. That in December 1870, he was outvoted in the board on this point and resigned.

"However, the defendant, after this resignation, continued to be and act as a stockholder, even up to the bringing of this suit, and sent his proxy to Dr. Nevin to vote at the last election for trustees, in May 1871, in order, as he says, to secure more judicious men for trustees.

"He now resists the payment of his stock on the ground that the charter forbade the company from undertaking the erection of a building until enough stock was subscribed to finish it; and that, in fact, the board of trustees has erected a building the contract price of which is $74,000 (to which is added the cost for the foundation of $7000), and which will yet cost, for heating and painting and glazing, about 18,000 more.

"[The counsel, in their final argument, have treated these facts as not being in dispute, and have rested the case on the law, to wit : The position of the defendant is that the plaintiffs cannot recover because the defendant says that the charter prohibited the trustees from beginning to build until bonâ fide stock was subscribed enough to complete the building, according to the requirements of the Act of Assembly for Normal Schools. We rule this point of law against the defendant. It was not necessary, by the charter, that enough stock should have been first subscribed to finish a building that would answer the requirements of the Act of Assembly. If enough stock was subscribed to enable the trustees to *erect* such a building, they had a right to proceed to do so, if they acted in good faith, in the reasonable expectation of finishing the building by procuring other stock, or by bequests or appropriations, or by borrowing money on mortgage not exceeding one-half the value of the real estate.] * * *

"The defendant thought they might properly contract for a building, provided its probable cost did not exceed the stock subscribed and the expected state appropriation by too large an amount. The difference of opinion between himself and his co-trustees was, that they thought it practicable and proper to enter upon the erection of this building with about $35,000 in stock and

[Craig *v.* Normal School.]

$15,000 of state appropriation, in the expectation that in the future they would be able to provide means to pay off the balance of the cost, whilst the defendant and some of the stockholders thought this course unwise.

" [We leave the facts of the case for your determination. The defendant's counsel say that as the court views the law, there are no facts in dispute, but there has been no formal and specific admission of them."]

The verdict was for the plaintiffs for $266.80. The defendant removed the case to the Supreme Court, and there assigned for · error :—

1. The rejection of his offers of evidence.

2, 3, 4. The answers to the plaintiffs' points.

5, 6, 7, 8. The answers to the defendant's points.

9, 10. The parts of the charge in brackets.

*J. McD. Sharpe* (with whom were *D. W. Thursh* and *W. S. Stenger*), for plaintiff in error.

*J. Stewart* (with whom were *J. A. C. McCune* and ——— *Kennedy*), for defendants in error.

Judgment was entered in the Supreme Court May 20th 1872.

PER CURIAM.—We have considered this case, and are not able to agree with the arguments of the learned and able counsel for the plaintiff in error. The words in the charter, " as soon as sufficient number of shares shall have been subscribed and a sufficient amount of money paid in, the trustees shall erect or cause to be erected, in a suitable and workmanlike manner, such building or buildings as will meet the requirements of the Act of Assembly " relating to Normal Schools, did not render the subscriptions conditional, or imply a prohibition to proceed to erect, after the authorized stock had all been subscribed. Other provisions in the act of incorporation clearly indicate that it was thought it might be requisite to raise more money than the stock authorized would produce, such as an authority to increase the capital stock, and to borrow money. The idea that all necessary means must be provided for such a building as might be determined upon, before commencing to erect it, is not in the charter. The twelve hundred shares of stock being taken, the corporation might organize and go into full operation. If this should not be sufficient for the building designed, then more stock might be authorized, or a loan made. In the terms of the charter all these contingencies were before the eyes of intended subscribers to the stock, and they cannot repudiate their subscriptions when made—more especially those who, like the plaintiff in error, paid one or more instalments on his stock, and assisted in organizing the company as a trustee.

[Craig *v.* Normal School.]

The views of the learned judge on this, as on all other points in the case, are unexceptionable.

Judgment affirmed.